UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| STANLEY JOSEPH THOMPSON, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 11-0272 (RBW) |
| UNITED STATES DEPARTMENT OF JUSTICE, | ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION

This matter is before the Court on the defendant's motion to dismiss and for summary judgment.[1] For the reasons discussed below, the motion will be granted.

### I. BACKGROUND

The plaintiff brings this action under the Freedom of Information Act ("FOIA"), *see* 5 U.S.C. § 552 (2010), against the United States Department of Justice ("DOJ") for the purpose of obtaining records from the Federal Bureau of Investigation ("FBI") about himself.[2] Specifically, the plaintiff's request reads:

---

[1] The Court construes the plaintiff's "Motion in Opposition/Response to Defendant's Motion for Dismiss [sic] and Summary Judgment; and Motion for Nul Tiel Finding in Regards to Requested Information from Defendant(s)" ("Pl.'s Opp'n") [Dkt. #12] as his opposition to the defendant's motion to dismiss and for summary judgment.

[2] A FOIA claim cannot be maintained against an individual, *see, e.g., Beard v. U.S. Dep't of Justice*, 917 F. Supp. 62, 63 (D.D.C. 1996), and for this reason, the Court has dismissed the claims asserted against Janice Galli McLeod, Associate Director of the DOJ's Office of Information Policy [Dkt. #3]. The DOJ is therefore the sole remaining defendant. For (continued . . .)

1

> I would like to request lift images of Stanley Thompson (#152044EB1) Case ID No. 91A-AT-101753, Lab No. 070419013[.]  I would also like to request processing records along with chain of command for this case.

Defendant's Motion to Dismiss and for Summary Judgment ("Def.'s Mot."), Declaration ("Decl.") of David M. Hardy ("Hardy Decl."), Exhibit ("Ex.") A (Identification of Requestor) at 2.  The FBI initially returned the plaintiff's request to him because "it did not contain sufficient information to conduct an accurate search of the Central Records System ('CRS')" at the FBI's Headquarters office ("FBIHQ").  *Id.*, Hardy Decl. ¶ 8.  The plaintiff submitted additional information in February 2009.  *Id.* ¶ 9.

Months later, the FBI "released 121 pages to plaintiff from file 91A-AT-101753," while withholding certain information under FOIA Exemptions 6, 7(C), 7(D) and 7(E).  *Id.* ¶ 12; *see id.*, Ex. F (Letter to plaintiff from David M. Hardy, Section Chief, Record/Information Dissemination Section, Records Management Division, FBI, dated January 20, 2010) at 1.  The plaintiff appealed this determination to the DOJ's Office of Information Policy ("OIP"), *id.*, Hardy Decl. ¶ 13, which was partially successful.  Namely, although the OIP affirmed the FBI's decision to withhold information under FOIA Exemptions 6, 7(C), and 7(E), it remanded the matter "for a further search for responsive records and for further processing of certain records withheld in full."  *Id.*, Ex. I (Letter to plaintiff from Janice Galli McLeod, Associate Director, OIP, dated June 29, 2010) at 1.  Consequently, on June 9, 2011, the FBI released another 12 pages to the plaintiff and withheld certain information under FOIA Exemptions 6 and 7(C).  *Id.*, Hardy Decl. ¶ 16.  On July 7, 2011, the FBI released in their entirety, *id.* ¶ 17, "two photographs of friction ridge impressions that were located on a demand note [used] during one of the

---

simplicity, because the plaintiff sought records maintained by the FBI, the Court will refer to the defendant as the FBI.

2

robberies." *Id*. ¶ 27.  However, "[n]one of the documents released to [the] plaintiff is a lift print." *Id*. ¶ 31.

## II.  DISCUSSION

### A.  *Summary Judgment Standard of Review in FOIA Cases*

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009).  The Court will grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a). More specifically, in a FOIA action to compel production of agency records, the agency "is entitled to summary judgment if no material facts are in dispute and if it demonstrates 'that each document that falls within the class requested either has been produced . . . or is wholly exempt from the [FOIA's] inspection requirements.'"  *Students Against Genocide v. Dep't of State*, 257 F. 3d 828, 833 (D.C. Cir. 2001) (quoting *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978)).

Summary judgment in a FOIA case may be based solely on information provided in an agency's supporting affidavits or declarations if they are "relatively detailed and non-conclusory," *Safecard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotations and citations omitted), and when they:

> Describe the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record [or] by evidence of agency bad faith.

*Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981); *see Beltranena v. Clinton*, 770 F. Supp. 2d 175, 181-82 (D.D.C. 2011).  "To successfully challenge an agency's showing that it complied with the FOIA, the plaintiff must come forward with 'specific facts'

demonstrating that there is a genuine issue with respect to whether the agency has improperly withheld extant agency records." *Span v. U.S. Dep't of Justice*, 696 F. Supp. 2d 113, 119 (D.D.C. 2010) (quoting *U.S. Dep't of Justice v. Tax Analysts,* 492 U.S. 136, 142 (1989)).

### B. The FBI's Search for Responsive Records

#### 1. CRS and Cross-References

The CRS includes "administrative, applicant, criminal, personnel and other files compiled for law enforcement purposes," and "consists of a numerical sequence of files . . . called 'classifications,' which are broken down [by] subject matter." Def.'s Mot., Hardy Decl. ¶ 18. The subject matter of a CRS file "may relate to an individual, organization, company, publication, activity or foreign intelligence matter (or program)." *Id.* FBIHQ maintains certain CRS records; FBI field offices maintain those CRS records "that are pertinent to specific field offices." *Id*. In order to search the CRS, "the FBI uses . . . the Automated Case Support System ('ACS')." *Id*.

The ACS is "an internal computerized subsystem of the CRS" which makes it possible to retrieve data from the CRS using alphabetically-arranged General Indices. *Id.* ¶ 20. "The General Indices consist of index cards on various subject matters that are searched either manually or though the automated indices." *Id.* There are two categories of General Indices:

> (a) A "main" entry – A "main" entry, or "main" file, carries the name corresponding with a subject of a file contained in the CRS.
>
> (b) A "reference" entry – A "reference" entry, sometimes called "cross references," are generally only a mere mention or reference to an individual, organization, or other subject matter, contained in a document located in another "main" file on a different subject matter.

*Id.*

"The ACS consists of three integrated, yet separately functional, automated applications that support case management functions for all FBI investigative and administrative cases." *Id.* ¶ 22. The Investigative Case Management ("ICM") application "provides for the ability to open, assign, and close investigative and administrative cases [and to] set, assign, and track leads." *Id.* ¶ 22(a). Each new case is assigned a Universal Case File Number "which is used by all FBIHQ, as well as all FBI field offices . . . that are conducting or assisting in the investigation." *Id.* The Electronic Case File application "serves as the . . . electronic repository for the FBI's official text-based documents." *Id.* ¶ 22(b). The Universal Index application provides "a complete subject/case index to all investigative and administrative cases." *Id.* ¶ 22(c). The FBI does not index every name in its files; individual FBI Special Agents assigned to an investigation decide whether "to index names other than subjects, suspects, and victims." *Id.* ¶ 23. Without an index "to this enormous amount of data, information essential to ongoing investigations could not be readily retrieved," and the agency's files "would thus be merely archival in nature." *Id.* "[T]he General Indices to the CRS are the means by which the FBI can determine what retrievable information, if any, [it] may have in its CRS files on a particular subject matter or individual, such as [the plaintiff] Stanley Thompson." *Id.*

### 2.  Searches for Lift Images

The FBI's declarant explains the distinction between "latent fingerprints" and "lift images." *Id*. ¶ 24. The former "are those left at a crime scene by a culprit as opposed to an intentionally-taken inked or digital impression," and the latter are latent fingerprints which were "lifted from a surface using tape and placed on a white sheet of paper." *Id.* "The lift images in [the] plaintiff's case were taken and processed by . . . Cobb County[, Georgia] Police Department [personnel]," and the FBI's Latent Print Operations Unit ("LPOU") did not process

the images further.[3]  *Id*; *see also* Memorandum in Support of Defendant's Motion to Dismiss and for Summary Judgment at 1 (designating that Cobb County is located in the State of Georgia).

The FBI searched the CRS "to identify all potentially responsive files indexed to [the plaintiff,] . . . using a six-way phonetic breakdown" of his name.  Def.'s Mot., Hardy Decl. ¶ 25.  Seven main files were located, but because the "plaintiff specifically requested file 91A-AT-101753, that was the only file . . . processed."  *Id*.  "No lift prints were located."  *Id*.  Notwithstanding its policy "to search for and identify only 'main' files responsive to a FOIA/Privacy Act request at the initial stage," the FBI took the additional step of searching for cross-references using the same variations of the plaintiff's name used for the search of the CRS.  *Id*. ¶ 26.  This second search identified no responsive records.  *Id*.  The FBI also "review[ed] the other six main files located during the initial search for copies of lift images," but "[t]his search did not turn up any responsive material."  *Id*., n.4.

Lastly, the FBI "contact[ed] the LPOU within the Biometrics Analysis Section under the Laboratory Division," the unit "responsible for examining, processing, preserving, and comparing friction ridge impressions ('latent fingerprints') and documenting the results of examinations in case notes and official reports."  *Id*. ¶ 27.  The LPOU did not locate any lift prints, but it "did find friction ridge impressions pertaining to plaintiff's case."  *Id*.  "[T]wo photographs of friction ridge impressions . . . located on a demand note used during one of the robberies" were released to the plaintiff in full.  *Id*.

---

[3]  "[I]t is the standard operating procedure of the [LPOU] not to conduct any further processing on images that have already been processed by another police agency."  *Id*. ¶ 24.

3. Discretionary Releases

According to the declarant, "investigative file 91A-AT0101753 and the LPOU file pertaining to the bank robbery investigation are the only places where . . . responsive documents are likely to be found," *id.* ¶ 28, and "the only latent prints found are the friction ridge impressions" released to the plaintiff in full, *id.* ¶ 29. Even though "[n]o lift prints were located in any of [its] . . . searches," *id.*, the FBI exercised its discretion to "provide[] all material within file 91A-AT-101753 that pertained to [the plaintiff] as well as the friction ridge impressions." *Id.* ¶ 30. These discretionary releases occurred on January 20, 2010, *id.*, Ex. L (Thompson-85A-179), June 9, 2011, *id.*, Ex. M (Thompson 182-193), and July 7, 2011, *id.*, Ex. N (Thompson-197).[4] "[N]one of the documents contain[ed] any information requested by [the] plaintiff" and the FBI withheld these documents under FOIA Exemptions 6, 7(C), and 7(E). *Id.*, Hardy Decl. ¶ 31. Moreover, the declarant avers that "none of the withheld information pertains to any information" responsive to the plaintiff's FOIA request for a "lift print." *Id.*

4. The Plaintiff's Challenges to the FBI's Searches

a. Processing and Chain of Command Records

While the plaintiff acknowledges the FBI's "thorough job in searching for 'lift images,'" he sought additional information, namely "processing records and chain of command for case No. 91A-AT-101753." Pl.'s Opp'n at 1.[5] By "chain of command," the plaintiff presumably means chain of custody. *See id.* at 4. He argues that the agency neither "researched nor

---

[4] "The discretionarily released documents . . . were Bates-numbered in consecutive order with the prefix 'Thompson' at the bottom right-hand corner of each page." *Id.*, Hardy Decl. ¶ 38.

[5] The plaintiff did not number the pages of his opposition, so the Court has designated page numbers for the opposition based on the order in which they were presented to the Court and designated by the Court's electronic filing system.

acknowledged" this portion of his request. *Id.* Additionally, the plaintiff argues that the FBI "did not specify whom these latent prints belonged to nor [sic] which demand note these latent prints were detected." *Id*.

The FBI responds, *see* Reply and Response ("Def.'s Reply") at 1, by referring to its *Vaughn* Index. *See generally* Def.'s Mot., Hardy Decl., Ex. L. It appears that, on April 16, 2007, agents at the FBI's Atlanta Field Office sent certain evidence to the FBI's Laboratory Division, including a "[d]emand note from Suntrust Bank on 03/26/07 Bar Code #E03992512 (1B2)," *id.*, Ex. L (Thompson-33) (emphasis removed), collected by Cobb County Police Department personnel, *id.*, Ex. L (Thompson-34), with instructions to conduct a latent fingerprint examination and to compare the known fingerprints to the plaintiff's fingerprints, *id.*, Ex. L (Thompson-35). The FBI Laboratory issued a Report of Examination on August 7, 2007, acknowledging receipt of the specimens on April 19, 2007. *Id.*, Ex. L (Thompson-76). The item designated "Q1" was a "[d]emand note beginning 'This is a robbery . . .' (1B2, E03992512; Item 1), bore "[t]wenty-three latent fingerprints," four of which were "identified as the fingerprints of STANLEY JOSEPH ROBINSON, FBI #152044EB1." *Id.*, Ex. L (Thompson-77) (emphasis in original). "Inasmuch as latent print examinations were conducted by someone else other than the FBI, no latent print examinations were conducted on [the remaining items]."[6] *Id.*, Ex. L (Thompson-77). Among the records released to the plaintiff was a memorandum summarizing the testimony that an FBI forensic examiner would have offered with respect to the latent print

---

[6]   The Report of Examination indicated that the "specimens and photographs of the detected latent prints [were] being returned under separate cover." *Id.*, Hardy Decl., Ex. L (Thompson-78). However, "a search of the Atlanta [Field Office] file (91A-AT-101753) revealed no latent prints." *Id.*, Hardy Decl. ¶ 27 n.5.

examination of item Q1.  *Id.*, Ex. L (Thompson 87-89).  It appears, then, that the content of the records released at the FBI's discretion address the concerns raised in the plaintiff's opposition.[7]

### b. "Latent prints" and "Latent Lifts"

The plaintiff notes that the FBI uses "many terms – friction ridge impressions, latent prints, lift images, latent lifts and lift prints," Pl.'s Opp'n at 3, and he "is not absolutely certain as to how the [FBI] construes the meaning" of such terms, leaving him to wonder how the FBI applies these terms to his request.  *Id.* at 2.  The plaintiff therefore attempts to clarify his FOIA "request for 'lift images' [as one] for an [sic] copy of the prints said to have matched Thompson's, allegedly found on an [sic] bank demand note."  *Id.* at 3.  This information is what the FBI appears to have released.  The search for "lift images" led to the discovery of friction ridge impressions and a copy of a report matching latent fingerprints found on a demand note was produced to the plaintiff.

---

[7]  The plaintiff further argues that the documents released by the FBI do not establish the chain of custody "of the demand notes received by the FBI from Cobb County and sent to the lab and sent back from the lab to the Atlanta Field Office," Motion in Opposition to Defendants [sic] Response ("Pl.'s Surreply") at 1, because the documents have not been authenticated as is required under Rule 901 of the Federal Rules of Evidence, *id.* at 2.  The plaintiff confuses the FBI's obligation under the FOIA with the government's obligation to present admissible evidence at trial.  On summary judgment in a FOIA case, the FBI must establish "that it has conducted a search reasonably calculated to uncover all relevant documents," *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1350-51 (D.C. Cir. 1983), and to present "a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply," *Mead Data Central, Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977). The FBI is under no obligation under the FOIA to respond to questions, *see, e.g., DiViaio v. Kelley*, 571 F.2d 538, 542-43 (10th Cir. 1978) (finding that the FOIA does not require "'answers to interrogatories' but rather only disclosure of documentary matters which are not exempt"), or to authenticate documents produced in response to a FOIA request, *see Jimenez v. Exec. Office for U.S. Attys.*, 764 F. Supp. 2d 174, 182 (D.D.C. 2011) (stating that an agency "is not obligated to respond to questions, requests for research or, as in this case, a request to authenticate or verify the contents of a particular document."). Any challenge the plaintiff may raise with respect to the sufficiency of the evidence used to convict him is therefore not properly before the Court on the defendant's summary judgment motion.

The plaintiff's confusion as to the meaning of the terms used by the FBI to refer to the fingerprint images he requested does not undermine the assertions set forth in the FBI's supporting declaration. The FBI conducted a search of the CRS using variations of the plaintiff's name as search terms; it located a main file with the same file number provided by plaintiff in his FOIA request; its search of this main file, as well as of the other six main files which could have contained responsive records, yielded the discovery of no "lift prints." However, the FBI released "friction ridge impressions pertaining to plaintiff's case" and released them in their entirety. Def.'s Mot., Hardy Decl. ¶ 27. The agency in its discretion also released to the plaintiff "all material within file 91A-AT-101753 that pertained to him as well as the friction ridge impressions." *Id*. ¶ 30. The FBI thus has demonstrated that its search for records responsive to the plaintiff's FOIA request was reasonably calculated to locate all responsive records.

### c. Request for Copies of Demand Notes

Plaintiff now requests information to determine "whom these latent prints belonged to [and on] which bank demand note these latent prints were detected." Pl.'s Opp'n at 4. Specifically, he "requests copies of all bank demand notes received/in possession of the [FBI] in regards to this case," as well as "the processing records for said friction ridges/prints . . . along with the chain of command (custody) for this 'print.'" *Id.* The plaintiff's request was for "lift images," not demand notes, and the FBI is under no obligation to now conduct a new and different search. *See Williams v. Ashcroft*, 30 F. App'x 5, 6 (D.C. Cir. 2002) (holding that the Federal Bureau of Prisons was "not required to search for or provide tape recordings . . . because [appellant] did not include these materials in his initial FOIA request"); *see also Kowalczyk v. U.S. Dep't of Justice,* 73 F.3d 386, 389 (D.C. Cir. 1996) (stating that an agency "is not obliged to look beyond the four corners of the request for leads to the location of responsive documents").

*C. Exemptions*

1. Exemption 7[8]

a. Law Enforcement Records

FOIA Exemption 7 protects from disclosure "records or information compiled for law enforcement purposes," but only to the extent that disclosure of such records would cause an enumerated harm. 5 U.S.C. § 552(b)(7); *see FBI v. Abramson*, 456 U.S. 615, 622 (1982). "To show that . . . documents were compiled for law enforcement purposes, the [agency] need only establish a rational nexus between the investigation and one of the agency's law enforcement duties and a connection between an individual or incident and a possible security risk or violation of federal law." *Blackwell v. FBI*, 646 F.3d 37, 40 (D.C. Cir. 2011) (internal quotation marks and citations omitted). It is apparent from the plaintiff's FOIA request that the information he seeks was compiled for law enforcement purposes.

The FBI investigated "the activities of plaintiff and others as a result of several bank robberies in Georgia." Def.'s Mot., Hardy Decl. ¶ 5; *see id.* ¶ 42. The plaintiff was indicted, arrested, tried and convicted by a jury of bank robbery and interference with commerce by threat or violence; he is now serving a prison sentence of 819 months. *See id.* ¶¶ 5-6. The Court agrees with the defendant that the investigation that resulted in the plaintiff's conviction "fall[s] squarely within the law enforcement duties of the FBI." *Id.* ¶ 42. The FBI has therefore

---

[8] The FBI's declarant explains that the agency's practice is to assert Exemption 6 in conjunction with Exemption 7(C). Def.'s Mot., Hardy Decl. ¶ 43 n.7. Because the same information is found to have been "compiled for law enforcement purposes, thus implicating Exemption 7(C), [the Court has] no need to consider Exemption 6 separately because all information that would fall within the scope of Exemption 6 would also be immune from disclosure under Exemption 7(C)." *Roth v. U.S. Dep't of Justice*, 642 F.3d 1161, 1173 (D.C. Cir. 2011) (internal quotation marks omitted)).

satisifed, and the plaintiff does not dispute, the threshold showing that the records at issue are law enforcement records within the scope of FOIA Exemption 7.

2. Exemption 7(C)

FOIA Exemption 7(C) protects from disclosure information in law enforcement records that "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552 (b)(7)(C). In determining whether this exemption applies to particular information, the Court must balance the interest in privacy of individuals mentioned in the records against the public interest in disclosure. *See ACLU v. U.S. Dep't of Justice*, 655 F.3d 1, 6 (D.C. Cir. 2011) ("In deciding whether the release of particular information constitutes an unwarranted invasion of privacy under Exemption 7(C), we must balance the public interest in disclosure against the [privacy] interest Congress intended the Exemption to protect.") (internal quotation marks and citation omitted); *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1115 (D.C. Cir. 2007); *Beck v. U.S. Dep't of Justice*, 997 F.2d 1489, 1491 (D.C. Cir. 1993). The privacy interest at stake belongs to the individual, not the government agency, *see U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 763-65 (1989), and "individuals have a strong interest in not being associated unwarrantedly with alleged criminal activity," *Stern v. FBI*, 737 F.2d 84, 91-92 (D.C. Cir. 1984). When balancing the private interest against the public interest in disclosure, "the only public interest relevant for purposes of Exemption 7(C) is one that focuses on 'the citizens' right to be informed about what their government is up to.'" *Davis v. U.S. Dep't of Justice*, 968 F.2d 1276, 1282 (D.C. Cir. 1992) (quoting *Reporters Comm.*, 489 U.S. at 773); *see also Sussman*, 494 F.3d at 1115. It is a FOIA requester's obligation to articulate a public interest sufficient to outweigh an individual's privacy interest, and the public interest must be significant. *See Nat'l Archives and Records Admin. v. Favish*, 541 U.S. 157, 172 (2004).

In this case, the FBI has withheld under Exemption 7(C) the names of and identifying information about "FBI [Special Agents] and support personnel who were responsible for conducting, supervising, and/or maintaining the investigative activities reported in the documents responsive to [the] plaintiff's request," Def.'s Mot., Hardy Decl. ¶ 45, third parties "of investigative interest to the FBI," *id.* ¶ 48, third parties "merely mentioned in documents related to the FBI's criminal investigation of [the] plaintiff," *id.* ¶ 49, local law enforcement officers, *id.* ¶ 50, and third parties "who were interviewed by the FBI during the course of the investigation of [the] plaintiff," *id.* ¶ 51.

Exemption 7(C) "recognizes the stigma potentially associated with law enforcement investigations and affords broader privacy rights to suspects, witnesses, and investigators." *Bast v. U.S. Dep't of Justice,* 665 F.2d 1251, 1254 (D.C. Cir. 1981). The District of Columbia Circuit has held "categorically that, unless access to the names and addresses of private individuals appearing in files within the ambit of Exemption 7(C) is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity, such information is exempt from disclosure." *SafeCard Servs*, 926 F.2d at 1206. The plaintiff raises no objection to the FBI's decision to withhold this information, and he presents no evidence to suggest that the FBI is engaged in illegal activity. *See generally* Pl.'s Opp'n. The FBI's decision to withhold this third-party information and also the information concerning law enforcement personnel from the responsive records provided to the plaintiff is fully consistent with the applicable caselaw. *See, e.g., Negley v. FBI*, No. 03-2126, 2011 WL 3836465, at *6-7 (D.D.C. Aug. 31, 2011) (withholding names and/or identifying information of: FBI personnel, individuals who furnished information to the FBI under an implied assurance of confidentiality, state government employees or non-federal law enforcement officers, third parties merely mentioned in the

records, individuals interviewed by the FBI, and third parties of investigative interest); *McGehee v. U.S. Dep't of Justice*, 800 F. Supp. 2d 220, 233-34 (D.D.C. 2011) (upholding non-disclosure of third parties merely mentioned, third parties who provided information, FBI Agents and support personnel, non-FBI federal government personnel, local and/or state government employees, third parties of investigative interest, and victims and survivors of the Jonestown Massacre in Guyana). The Court concludes that the withholding of the names and identifying third-party information at issue here is proper under Exemption 7(C).

### 3. Exemption 7(E)

Exemption 7(E) protects from disclosure law enforcement records "to the extent that the production of such . . . information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). Courts have held that information pertaining to law enforcement techniques and procedures properly is withheld under Exemption 7(E) where disclosure reasonably could lead to circumvention of laws or regulations. *See, e.g., Morley v. CIA*, 453 F. Supp. 2d 137, 157 (D.D.C. 2006) (approving the withholding of information pertaining to security clearances and background investigations on the ground that "disclosure of CIA security clearance and investigatory processes would risk circumvention of those processes in the future"), *rev'd on other grounds*, 508 F.3d 1108 (D.C. Cir. 2007).

Among the records responsive to the plaintiff's FOIA request is the FBI Form FD-515, which "is . . . used by FBI [Special Agents] to report investigative accomplishments . . . such as an arrest[] or the recovery of stolen property." Hardy Decl. ¶ 54. On each Form FD-515 is a section captioned "Investigative Assistance and Techniques Used." *Id.* In that section are listed

"27 publicly known investigative techniques and/or assistance . . . used by investigative personnel during the investigation," and opposite each item is a column on which to record "a numerical rating from 1 to 4 to rate . . . the effectiveness of each technique/assistance used in bringing the investigation to a successful conclusion." *Id.* The FBI's declarant explains that "[t]he entire rating column has been deleted" because disclosure of the rating column and the ratings themselves could allow the "plaintiff and others involved in criminal violations such as plaintiff's [to] change their activities and modus operandi in order to avoid detection and/or surveillance in the future." *Id.*

The plaintiff offers no objection to the redaction described by the FBI's declarant, and this Court finds the FBI's reasoning persuasive, as have other judges in this district. *See, e.g., Sellers v. U.S. Dep't of Justice*, 684 F. Supp. 2d 149, 164 (D.D.C. 2010); *Kishore v. U.S. Dep't of Justice*, 575 F. Supp. 2d 243, 258-59 (D.D.C. 2008); *Perrone v. FBI,* 908 F. Supp. 24, 28 (D.D.C. 1995). The Court therefore concludes that the FBI properly has withheld the rating information on the FD-515 forms.

### D. Segregability

If a record contains some information that is exempt from disclosure, any reasonably segregable information must be released after deleting the exempt portions, unless the non-exempt portions are inextricably intertwined with exempt portions. 5 U.S.C. § 552(b); *see Trans-Pacific Policing Agreement v. U.S. Customs Serv.,* 177 F.3d 1022 (D.C. Cir. 1999). A court errs if it "simply approve[s] the withholding of an entire document without entering a finding on segregability, or the lack thereof." *Powell v. U.S. Bureau of Prisons,* 927 F.2d 1239, 1242 n.4 (D.C. Cir. 1991) (quoting *Church of Scientology of Cal. v. U.S. Dep't of the Army,* 611 F.2d 738, 744 (9th Cir. 1979)).

The FBI's declarant avers that the agency "has processed and released all reasonably segregable information from the documents discretionarily released to [the] plaintiff." Def.'s Mot., Hardy Decl. ¶ 55. The Court has reviewed the FBI's declaration and copies of the redacted records, and finds that these submissions adequately specify "which portions of the document[s] are disclosable and which are allegedly exempt." *Vaughn v. Rosen*, 484 F.2d 820, 827 (D.C. Cir. 1973).

### III.  CONCLUSION

The FBI has conducted an adequate search for information responsive to the plaintiff's FOIA request and properly has withheld responsive information under Exemptions 7(C) and 7(E). The agency has established that there is no genuine issue of material fact as to its compliance with the FOIA and that it is entitled to judgment as a matter of law. Accordingly, the Court will grant the defendant's motion. An Order accompanies this Memorandum Opinion.

DATE: March 30, 2012                             REGGIE B. WALTON
                                                 United States District Judge